UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-276-GWU

CARL DAVID BARRON,                                                                PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

>   in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.
>
> 4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

08-276 Carl David Barron

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

08-276 Carl David Barron

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id.</u> Accord, <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work.

4

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

08-276 Carl David Barron

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

08-276  Carl David Barron

## DISCUSSION

The plaintiff, Carl David Barron, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a bipolar disorder, early dementia secondary to a head injury, degenerative changes to the left ankle status post a fracture with open reduction and internal fixation, bilateral carpal tunnel syndrome, and bilateral shoulder pain. (Tr. 25). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Barron retained the residual functional capacity to perform a significant number of sedentary jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 28-33). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to lifting 20 pounds occasionally and 10 pounds frequently, standing or walking for two hours in an eight-hour day and sitting for six hours, with the option of sitting or standing and no prolonged standing or walking in excess of 20 to 30 minutes without interruption, and also had the following non-exertional limitations. (Tr. 537).  He: (1) could not balance, kneel, crawl, or climb ladders, ropes, or scaffolds; (2) could not operate foot pedal controls, perform rapid or repetitive flexion or extension of the wrists, or work with his hands overhead; (3) could not perform aerobic activities such as running, jumping, or working on fast-paced assembly lines; (4) could not work around industrial hazards; (5) could occasionally

7

reach and climb ramps and stairs; (6) might require a cane for prolonged ambulation; (7) required simple, entry level work with one- or two-step procedures, no frequent changes in work routines, no requirement for detailed or complex problem solving, independent planning, advanced literacy, or the setting of goals and (8) "preferably" should work in an object-oriented environment with only occasional interaction with coworkers, supervisors, or the general public. (Tr. 537-8). The VE responded that there were jobs that such a person could perform at the sedentary level, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 538-9).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Barron alleged disability beginning July, 2005 due to a "deteriorated left ankle." (Tr. 91-2). At the administrative hearing, he stated that, although he had stopped work because of his ankle problems, he also had carpal tunnel syndrome in both hands and suffered from a bipolar disorder which had caused him to be hospitalized as recently as January, 2007 during a manic phase. (Tr. 504, 511-12). His left ankle had been broken in a 1994 motorcycle accident, and he had also broken bones in his face in a 1991 motor vehicle accident in which he was knocked out. (Tr. 506-7). He had been on SSI for a time following the 1994 accident, but finally went to work on his own although no doctor ever released him. (Tr. 516-17). However, his job involved constant standing, and he was unable to continue. (Tr.

8

519-20). He had also had difficulty with a left shoulder problem, although he felt this only bothered him if he had to perform swimming motions. (Tr. 521-2).

Regarding his mental problems, Mr. Barron stated that he had been attending counseling at Comprehensive Care since November, 2006, and was taking Lithium and Seroquel for his nerves. (Tr. 506). He testified that he still had ups and downs, but not as much as before taking Lithium, although he still got "the blues" as a result of small things, and sometimes could not remember what he was doing in manic phases. (Tr. 511-12). He felt that he had had difficulty remembering since his 1991 motor vehicle accident, and had not been able to keep up with the work required of him at one of his employers. (Tr. 520-1). In addition to difficulty remembering what he read, he would become lost when visiting cities such as Danville and Lexington. (Tr. 531-2).

The evidence includes a considerable amount of evidence reflecting the 1991 and 1994 accidents. (E.g., Tr. 134, 159, 161, 175-6, 266). The plaintiff's complaints of right shoulder pain were evaluated by Dr. Andrew Kovacs in March, 2004. (Tr. 372). Dr. Kovacs's impression was mild myofascial pain localized to the superonedial angle of the scapula and he recommended physical therapy, steroid injections, and possible surgery. (Tr. 374). He believed that Mr. Barron could be employed in a modified capacity, preforming left-handed work with only assistance from his right hand. (Tr. 375). He felt that Mr. Barron would be able to use his right hand working in front without elevating the arm. (Id.). He added that he considered

Mr. Barron to be sincere and did not believe there was any magnification of symptoms. (Tr. 374).

The only other examining source to give functional restrictions was Orthopedist Dr. Jeremy Tarter who treated Mr. Barron in 2005 for left ankle pain on referral from Dr. Joseph Lukins, the orthopedic surgeon who had performed an open reduction and internal fixation of Mr. Barron's left ankle fracture in 1994. (Tr. 266-7, 319). Mr. Barron had complained to Dr. Lukins at a July 6, 2005 office visit coinciding with his alleged onset date that his left ankle hurt with virtually any weight bearing and he was having difficulty walking even two blocks and completing a workday. (Tr. 319). Dr. Tarter's examination showed a significantly limited range of motion in the left ankle with pain at the extremes of motion, and he reviewed a CT scan showing significant post traumatic arthritis. (Tr. 268, 317). Dr. Tarter stated that treatment options were limited, and he encouraged Mr. Barron to pursue vocational rehabilitation because he did not feel he could continue to perform his current job. (Tr. 317). He gave the plaintiff a brace for his left ankle in August, 2005, and noted that he would support his application for disability. Dr. Tarter continued to treat Mr. Barron for arm pain which he identified as carpal tunnel syndrome. (Tr. 316).

On January 27, 2006, Dr. Tarter wrote a letter describing the plaintiff's conditions and listing functional restrictions. Initially, he noted that pain from Mr. Barron's left hind foot arthritis was of a sufficient degree that it would distract him

from working in even a sedentary-type position, and that the pain would be exacerbated by long standing. (Tr. 313). It would be impossible to run, climb ladders, or perform other more vigorous activities. He felt that Mr. Barron could "rarely" lift 11 to 20 pounds and could lift 10 pounds only occasionally. He could sit for one to two hours in an eight-hour day but did not think he would be capable of standing and walking and working for any significant time at all. He would never be able to crouch, crawl, or climb and could occasionally kneel but would have difficulty getting up. Fine manipulation, grasping, pushing, and pulling would be compromised by carpal tunnel syndrome on the right, and his shoulder problem, which Dr. Tarter had not personally evaluated, could compromise the use of his right arm overhead. He felt that Mr. Barron could use his right leg for foot controls, but absolutely not his left leg. He reiterated that he thought the plaintiff's symptoms would interfere with regular work attendance, and although he would ultimately require surgery on the ankle, this would probably not eliminate pain and significant permanent functional difficulties would remain. (Id.).

The only other opinion regarding functional capacity from any source appears to be from a state agency reviewer, Dr. Allen Dawson. However, only a portion of Dr. Dawson's functional capacity assessment, pages 7 and 8, appear to be contained in the court transcript, with the remainder of the functional capacity assessment evidently being contained in a "Request for Medical Advice" completed by a state agency functionary without medical credentials. (Tr. 291-9). In any case,

08-276 Carl David Barron

even if it were assumed that the functional capacity assessment, which limits the plaintiff only to "light" level exertion with occasional climbing of ramps and stairs and no climbing of ladders, ropes, and scaffolds, could be ascribed to Dr. Dawson, the opinion was completed before much of the medical evidence was submitted and certainly before Dr. Tarter's and Dr. Kovacs's opinions were available. Therefore, since the reviewer would not have had an opportunity to comment on the greater functional restrictions suggested by treating and examining sources, his opinion could not serve as substantial evidence to support the ALJ's decision. Social Security Ruling (SSR) 96-9p; Rogers v. Commissioner of Social Security, 486 F.3d 234, 245 n. 4 (6th Cir. 2007).

The ALJ briefly stated that he would not give the opinion of Dr. Tarter controlling weight because it was not fully supported by the medical evidence and was inconsistent with the other evidence of record. (Tr. 31). He did not specify how it was not fully supported by medical evidence or what other clinical findings regarding the plaintiff's ankle and carpal tunnel syndrome were inconsistent. Thus, it is questionable whether this explanation meets the procedural requirement for rejecting treating physicians' opinions set out in Wilson v. Commissioner of Social Security, 378 F.3d 541, 545 (6th Cir. 2004). The Wilson court emphasized that specific reasons had to be given for rejecting a treating physician opinion as a procedural safeguard. Although the Commissioner suggests in his brief that Dr. Tarter's opinion is unreliable because the plaintiff had been able to work with his

ankle problem for several years and there was no evidence of a sudden deterioration in condition, it is noteworthy that the ankle problem was considered to be a degenerative condition (e.g., Tr. 344), which would normally be expected to grow worse with the passage of time.

Even setting aside the Wilson issue, and noting that the ALJ made an effort to accommodate most of the restrictions set out by Dr. Tarter, there was a potentially significant omission in that Dr. Tarter's limitation on fine manipulation, grasping, and pushing and pulling with the right arm was not entirely reflected in the hypothetical question. The plaintiff was restricted to no rapid or repetitive flexion or extension of the wrist or work with the hands overhead, but SSR 96-9p notes that "most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." SSR 96-9p, p. 8. In fact, the ruling goes on to state that an individual who is prevented from the performance of any sedentary occupations that did not require bilateral manual dexterity would be considered disabled as per Example 1 in § 201.00(h) of Appendix 2 of the Commissioner's regulations. Therefore, a remand is clearly required to further exploration of this issue.

The plaintiff also maintains on appeal that the ALJ did not perform a proper credibility analysis.  Without going into great detail regarding the factors for assessing credibility set out in SSR 96-7p, the court notes that apparently nowhere in the ALJ's decision does he mention the opinion of the treating specialist Dr. Tarter that the plaintiff's pain would distract him from working in even a sedentary position and interfere with his attention and concentration.  (Tr. 313).  Nor does he mention the opinion of Dr. Kovacs, who appeared to be conducting an evaluation for the plaintiff's employer's Workers Compensation carrier, that Mr. Barron was sincere and not magnifying his symptoms.  (Tr. 374).  The court is also somewhat dubious of the ALJ's citing, among the plaintiff's daily activities, the fact that he shopped for groceries in a riding cart and mowed his yard on a riding lawn mower as factors tending to detract from his allegation of disabling ankle pain.  The fact that a man in his early thirties used an electric cart to do grocery shopping would be seem to support a claim of debilitating pain rather than detract from it.

The plaintiff also raises an issue regarding his mental restrictions.  As previously noted, the ALJ found that his "severe" impairments included bipolar disorder and early dementia secondary to a head injury.  (Tr. 25).  Dr. Timothy J. Carbary, a neuropsychologist, evaluated Mr. Barron in November and December, 2005 and noted his complaints of anxiety, panic, and difficulty with memory and attention.  (Tr. 307).  During testing, Mr. Barron had difficulty sustaining attention and got lost in the building during a break.  (Tr. 308).  Intelligence testing showed

an IQ in the low average range and achievement testing showed impaired comprehension and a memory impairment in face of a good performance on a motivation/malingering test. (Tr. 310). Dr. Carbary assessed a Global Assessment of Functioning (GAF) score of 49 (Tr. 311), consistent with major impairment in several areas. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. Subsequently, the plaintiff underwent two psychiatric hospitalizations for manic episodes in November and December, 2006. (Tr. 354-5, 448-9). On both occasions, he improved quickly with treatment and was discharged to the care of the local Comprehensive Care Center. At the time of the last discharge, he was given a GAF of 55, reflecting at least moderate restrictions. In terms of specific functional limitations, Dr. Melissa Conner, a psychiatrist who had evaluated Mr. Barron for Bluegrass Regional Mental Health on December 20, 2006 and who diagnosed a mood disorder and probable bipolar affective disorder, with a GAF of 50 (almost the same as Dr. Carbary and only slightly lower than the GAF score given on discharge after the plaintiff's second hospitalization), prepared a functional capacity assessment on March 16, 2007 reflecting "marked" impairment in many areas. (Tr. 471-3). The ALJ rejected this assessment on the grounds that "Dr. Conner performed his (sic) psychiatric evaluation before the claimant had undergone any mental health treatment" and because he felt that the plaintiff's bipolar disorder was "receptive to medications when he is compliant." (Tr. 31). Dr. Conner's December 20, 2006 evaluation was after Mr. Barron's first psychiatric

15

08-276  Carl David Barron

hospitalization (Tr. 354) and he was apparently attempting to be compliant with his medication regimen at the time of the second hospitalization (Tr. 448).  He did testify at the March 7, 2007 administrative hearing fewer "ups and downs" on Lithium (although it made him sleepy) but it is not clear that this testimony by itself is sufficient to definitively rule out the restrictions given by the examining professional.

The plaintiff has also submitted additional evidence to the Appeals Council, and while it cannot be considered as part of this court's substantial evidence review, it may be considered along with any new evidence on remand.

The decision will be remanded for further consideration.

This the 8th day of July, 2009.

**Signed By:**

<u>G. Wix Unthank</u>

**United States Senior Judge**